IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM LUMPKIN, # 03142-00 | * | |
| Petitioner | * | |
| v | * | Civil Action No. RDB-15-2541 |
| UNITED STATES PAROLE COMMISSION, WARDEN TIMOTHY STEWART, FCI Cumberland | * * | |
| Respondents | * *** | |

**MEMORANDUM OPINION**

Williams Lumpkin is an inmate at the Federal Correctional Institution in Cumberland, Maryland. Pending is his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241. Lumpkin alleges the United States Parole Commission ("Commission") violated his procedural due process and equal protection rights under the Constitution by failing to provide him with annual parole hearings in 2013 and 2014. As redress, Lumpkin seeks to compel the Commission to grant him "a conditional release." (ECF 1-1 at 3, 7-8).

Respondents filed a Response to which Lumpkin filed a Reply. (ECF 5, 6). Subsequently, this Court granted Respondents leave to file a supplemental exhibit to the Response. (ECF 8). Lumpkin filed an Opposition. (ECF 10). The case is ready for disposition and a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons to follow, this Court will DENY AND DISMISS the Petition with prejudice.

**BACKGROUND**

On May 5, 1988, Lumpkin was sentenced to life imprisonment in the District of Columbia Superior Court for conspiracy, assault with intent to commit robbery, assault with

intent to kill while armed, carrying a pistol with without a license, and assault with a dangerous weapon in connection with the December 16, 1987, shooting of three undercover police officers during a drug transaction. (ECF 5 at 2, ECF 5-2 at 1).

The Commission conducted Lumpkin's initial parole hearing on October 31, 2012. (ECF 5-2). The Commission calculated Lumpkin's Total Point Score or "grid score" of 1, a score that typically indicates parole is appropriate under its guidelines. (ECF 5 at 2; ECF 5-2 at 14). Lumpkin's salient factor score was 9 points, which translated into a base score of zero points (low risk category). The calculation reflected one point for "type of risk" because Lumpkin's offense involved violence and use of a weapon. One point was added for "negative institutional behavior" based on Lumpkin's two institutional infractions: Assault (Class I) and Possession of a Dangerous Weapon (Class I). One point was deducted for program achievement. In sum, Lumpkin's point score, or "grid score" totaled one point. (ECF 5-2)

The Commission issued a Notice of Action on December 3, 2012, that departed from the Guidelines, denied parole notwithstanding Lumpkin's Total Point Score, and continued Lumpkin for parole reconsideration in 24 months. The Commission's explained its reasons for the departure in its Notice:

> You have a total point score of 1 under the 1987 Board guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score because your instant offense involved you shooting three undercover officers during a drug transaction. The investigation revealed that you were planning to rob your buyers of $8,500, the purchase price of the drugs. After you shot two undercover officers, you began to flee and shot at a vehicle with two other individuals in the vehicle who were also undercover officers.
>
> Your disregard for human life and your shooting of your victims makes you a risk to the public if released at this time. In addition, you committed rescission

2

behavior which included Assault on a Correctional Officer and Possession of a Dangerous Weapon. Your release at this time would endanger public safety. It is recommended that you complete programs which identify victim impact issues for you to remain crime free in the community.

The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted for the same reasons provided above for denying parole.

(ECF 5-2 at 18).

The Commission based its decision was based on its authority to deny parole notwithstanding a point score. This authority provides:

> The Board **may**, in unusual circumstances, waive the SFS (Salient Factor Score) and the pre- and post-incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

28 D.C.M.R. § 204.22. (emphasis added). Lumpkin's counsel's requests to reopen the case and to meet with a Commission representative were denied. (ECF 5-2 at 20-24).

On June 4, 2015, the Commission conducted Lumpkin's rehearing. (ECF 5-2 at 25-27, Post Hearing Assessment (June 16, 2015)). The hearing examiner noted Lumpkin had no disciplinary infractions since his last hearing, had successfully completed institutional programming, including 128 hours of victim impact education, and was described by a Bureau of Prisons staff member as a role model for the correctional facility. *Id.* at 26. The hearing examiner calculated Lumpkin's grid score as zero points, and recommended Lumpkin's parole begin in nine months to allow for release planning. *Id.* at 27. The Commission rejected the recommendation, denied parole, and ordered reconsideration for June of 2017. *Id.* at 28. The Commission explained its reasons for denying parole as follows:

> With adjustment reflecting your institutional record since your last hearing, your current Grid Score is 0. You continue to be scored under the

3

> 1987 guidelines of the D.C. Board of Parole. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your grid score because your disregard and reckless behavior using a deadly weapon shooting law enforcement officers caused serious injuries. You have shown in the past while incarcerated, disregard for institutional rules by committing criminal behavior. The Commission does recognize your programming achievements since your last hearing; however, a rehearing ordered after the service of 24 months.
>
> The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted for the same reasons provided above for denying parole.

*Id.* at 29.

## DISCUSSION

Lumpkin alleges the Commission violated his rights to procedural due process and equal protection by ordering a hearing for him in 24 months rather than within 12 months. Specifically, he claims that he "was statutorily mandated to be provided with annual parole hearings for the years of (2013) and (2014)." (ECF 1-1 at 3, 7-8).

### I.    COMMISSION AUTHORITY

The Commission is authorized to consider parole for District of Columbia Code offenders pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-131 (formerly 24-1231).[1] Lumpkin's parole review is conducted pursuant to the D.C.

---

[1] Respondents delineated the history of Commission's jurisdiction over D.C. Parole offenders in their supplemental exhibit. (ECF 8). The National Capital Revitalization and Self-Government Improvement Act requires the Commission to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," and gave the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code §24-1231(a)(1) and (c)(1999), recodified as D.C. Code §24-131(a)(1) and (c)(2001). The Commission, effective August 5, 1998, adopted a revised version of the D.C. parole regulations that had been in effect since 1987. *See* 28 C.F.R. § 2.70 (1999).

4

parole statute, D.C. Code §24-404. *See* D.C. Code § 24-131(c) ("The Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia [.]"). The statute provides in relevant part:

> Whenever it shall appear to the United States Parole Commission ("Commission") that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be, the Commission **may** authorize his release on parole upon such terms and conditions as the Commission shall from time to time prescribe.

D.C. Code § 24-404 (emphasis added). The statute is silent as to the timing of parole hearings. Thus, Lumpkin's contention that annual parole hearings are statutorily mandated has no merit.

Pursuant to the D.C. regulations, rehearings after denial of parole are conducted annually in the ordinary case. *See* 28 D.C.M.R. § 104.2 ("When the Board denies parole and orders reconsideration for a person serving a maximum sentence of five (5) years or more, reconsideration shall ordinarily occur within twelve (12) months."). Of import here, the Commission has authority to order a rehearing ("set off") after a longer time than the ordinary one-year requirement, at a date it determines appropriate. The Commission may depart from the annual rehearing provision guideline. The regulations explicitly state: "Notwithstanding any other provision of this section, the Board may order a parole reconsideration date it determines to be appropriate." 28 DCMR § 104.11; *see also White v. Hyman*, 647 A.2d 1175, 1179 (D.C. 1994); *Jones v. Braxton*, 647 A. 2d 1116, 1117 (D.C. 1994); *Hall v. Henderson*, 672 A. 2d 1047, 1054 (D.C. 1996).

## I.   DUE PROCESS

Inmates do not have a constitutional liberty interest in parole from a valid sentence. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Jago v. Van Curen*, 454 U.S. 14, 14–15, 17, 21,

5

(1981); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Absent a liberty interest, procedural due process is not implicated by the Commission's attendant decision when to scheduling hearings. *Hall v. Henderson*, 672 A. 2d 1047, 1054 (D.C. 1996) (quoting *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995). Here, Lumpkin premises his procedural due process claim on an alleged statutory right to annual hearing. As discussed, there is no right to an annual parole hearing. It therefore follows that the procedural due process claim presented here lacks merit. *See Brandon v. D.C. Board of Parole*, 823 F.2d 644 (D.C. Cir. 1987). Accordingly, Lumpkin's claim of denial of procedural due process will be denied and dismissed with prejudice.

## II. EQUAL PROTECTION

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). To establish an equal protection claim, an inmate "must first demonstrate 'that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Id.* (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). He must next show that the policy is not "reasonably related to [any] legitimate penological interests." *Veney*, 293 F.3d at 732 (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Lumpkin does not state facts supporting these elements. Aside from generally alleging his right to equal protection was denied when he was not accorded parole hearings in 2013 and

2014, the Petition fails to specify how other similarly situated inmates were treated differently than Lumpkin. Consequently, this claim will be denied and dismissed with prejudice.[2]

## CONCLUSION

Lumpkin's allegations of constitutional violation are without legal merit. Accordingly, the Petition will be denied and dismissed by separate Order.

OCTOBER 13, 2016
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[2] Lumpkin's argues that the Response filed by the Commission and Warden Stewart is procedurally deficient because he is in the sole custody of the Warden. (ECF 10). Lumpkin's claim is unavailing. Lumpkin's challenge to his confinement directly challenges Commission's parole decisions and he named both the Commission and Warden Stewart as Respondents in the Petition. (ECF 1-1).